IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA FAY ANWAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:17-cv-273-WC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

**I.  INTRODUCTION**

On May 22, 2014, Patricia Fay Anwar ("Plaintiff") filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act alleging disability beginning on October 1, 2012.[2] The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. The ALJ's

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill shall be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Although Plaintiff alleged an earlier onset date, for SSI benefit purposes, she must establish disability as of the application date. Therefore, the relevant period for Plaintiff's SSI application is the month in which she filed her application through the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.330; 416.335.

decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[3] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10).

Based on the court's review of the record and the parties' briefs, the court AFFIRMS the Commissioner's decision.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?
An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on the claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work

---

[5] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

3

experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was sixty-one years old on the date of the ALJ's decision. Tr. 45, 164. She earned a GED and had past work experience as a biscuit baker, grill cook, and hand folder. Tr. 33, 48-50, 61-62, 239. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since May 22, 2014, the application date[.]" Tr. 29. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "diabetes mellitus with reported peripheral neuropathy, obesity, asthma/COPD with tobacco abuse, and hypertension[.]" *Id*. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 30. Next, the ALJ articulated Plaintiff's RFC as follows:

> [t]he claimant has the residual functional capacity to perform a range of medium work, as that term is otherwise defined in 20 C.F.R. 416.967(c). Specifically, the claimant can lift and carry up to 50 pounds occasionally and up to 25 pounds frequently. She can push and pull within those same exertional limitations. She can stand or walk about 6 hours and she can sit for at least 6 hours out of an 8-hour workday. The claimant can only occasionally stoop, crouch, kneel, crawl, and climb—but cannot climb ladders, ropes, or scaffolding. She is able to perform fine and gross manipulation on no greater than a frequent basis. She can perform tasks not

5

involving exposure to temperature extremes or exposure to workplace hazards such as unprotected heights and dangerous moving machinery. She can perform tasks not involving operation of vibrating tools or equipment or operation of motorized vehicles.

*Id.* At Step Four, based upon the testimony of a VE, the ALJ concluded that Plaintiff "is unable to perform any past relevant work." Tr. 33. At Step Five, based upon Plaintiff's age, education, work experience, and RFC, and consistent with the testimony of the VE, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. 34. The ALJ identified the following representative occupations: "order picker," "grocery bagger," and "hand packager." Tr. 34. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . since May 22, 2014, the date the application was filed[.]" Tr. 35.

## IV. PLAINTIFF'S ARGUMENT

Plaintiff presents three issues on appeal:

(1) Whether the ALJ erred by making an RFC finding that was not based on the record;

(2) Whether the ALJ erred by not relying on a medical source opinion when determining Plaintiff's RFC; and

(3) Whether the ALJ erred by not addressing the evaluation of Aaron Jones, a state agency Single Decision Maker.

Doc. 19 at 1, 5-13.

## V. DISCUSSION

**A. Whether the ALJ's RFC was based on substantial evidence in the record**

Plaintiff first argues that the ALJ's RFC finding was not based on the record. *Id.* at 5. Plaintiff argues that an RFC "'must be based on all of the relevant evidence in the case record,'" *id.* at 6 (emphasis omitted) (quoting SSR 96-8p), "requires a sufficient summary of the medical evidence, and should not be 'a conclusory, categorical RFC assessment,' or a 'broad statement.'" *Id.* at 7 (quoting *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1374 (N.D. Ga. 2006)). Although Plaintiff concedes that the ALJ "provided a thorough summary of the medical evidence," she nevertheless contends that the ALJ only "offered a 'broad statement'" in support of the RFC determination. *Id.* It appears that Plaintiff takes specific issue with the following statement made by the ALJ: "In sum, the above residual functional capacity assessment is supported by limited objective evidence of physical limitations, combined with significant history of noncompliance with treatment." Tr. 33. Plaintiff asserts that this statement is too broad and insufficient to properly summarize the medical evidence and evaluate Plaintiff's RFC. Doc. 19 at 6-7.

Upon review of the record and the ALJ's decision, the court is not persuaded. The statement that Plaintiff highlights is the ALJ's final summation of over three pages of analysis related to Plaintiff's RFC. *See* Tr. 31-33. Throughout his decision, the ALJ thoroughly discussed and cited the medical evidence of record pertaining to the relevant time period, reviewed Plaintiff's testimony, made credibility determinations, and otherwise explained the reasoning behind the RFC assessment. *See id.* As detailed in the ALJ's decision, the medical evidence lacked objective findings to support Plaintiff's complaints of disabling symptoms. Tr. 31. Plaintiff often complained of pain in various parts of her

body, but physical examinations typically showed little, or no, abnormality. Tr. 32, 342, 345-46, 349-50, 361, 372-73, 381-82, 397. The ALJ nevertheless credited Plaintiff's subjective complaints to an extent by limiting her to medium work with restrictions from driving vehicles and climbing ladders, ropes, and scaffolding due to her complaints of foot pain. Tr. 33. Additionally, Plaintiff's allegations of peripheral neuropathy in her hands led the ALJ to limit her to no more than frequent use of her hands and to no use of vibrating tools or equipment. *Id.* The ALJ found that Plaintiff had pulmonary problems, diabetes, and obesity, and limited her exertional activity and her tolerance for extremes of temperature and humidity. *Id.* Due to Plaintiff's hypertension and history of substance abuse, the ALJ found that Plaintiff had a limited ability to tolerate exposure to workplace hazards and operation of motorized vehicles. *Id.* However, the ALJ found that no further limitations than these were warranted because the medical evidence did not show "significant orthopedic, musculoskeletal, or cardiac issues." *Id.*

The ALJ also cited various instances of Plaintiff's "intermittent treatment" and "frequent noncompliance" with prescribed medications. *Id.* In particular, the ALJ noted that Plaintiff's diabetes mellitus was "exacerbated by a significant history of noncompliance" and cited several instances where Plaintiff simply had not purchased or picked up her prescribed medications. Tr. 31-32. The ALJ cited one treatment note in July 2014 in which Plaintiff was noted to have "severe problems with compliance, including failure to keep appointments, failure to take medication, and lack of interest in specialist referrals[.]" Tr. 32, 397. The ALJ observed that Plaintiff had been "less than compliant

8

with respect to medical advice and that her symptoms would likely improve if she were to follow prescribed diets, lose weight, quit smoking, and quit consuming sodas — to say nothing of adhering to medications and dosing regimens set out by her healthcare providers." Tr. 33. The ALJ explained that, even setting aside Plaintiff's noncompliance, she was capable of performing work at the medium exertional level. *Id.*

From the court's review, the medical evidence supports the ALJ's RFC assessment. Plaintiff cites certain notations from the record that she believes support greater limitations than those found by the ALJ. Doc. 19 at 8-9. However, in so doing, Plaintiff essentially asks the court to reweigh the evidence, which is not the court's role. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that [the plaintiff] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.") (internal quotations and footnotes omitted).

Moreover, the evidence that Plaintiff cites does not, on the whole, undermine the substantial evidence supporting the ALJ's decision. For instance, Plaintiff cites one abnormal monofilament examination on February 25, 2014, prior to the relevant disability period. Doc. 19 at 8. However, she ignores normal monofilament examinations during the relevant period, such as in June 2014 and July 2015, which the ALJ considered in his decision. Tr. 32, 361, 397. Likewise, Plaintiff cites a finding of mild finger swelling during

an examination nearly one year before the relevant disability period, but ignores examinations during the relevant period showing no edema in her extremities. Doc. 19 at 8; Tr. 361, 367, 382, 397. Plaintiff cites to an examination in July 2014 showing reduced range of motion in her right knee and left wrist, Doc. 19 at 8-9; Tr. 367, but ignores unremarkable examinations that the ALJ cited in his decision. Tr. 345, 349-50, 361, 367, 373, 382, 397. Plaintiff cites one respiratory examination showing decreased breath sounds, but ignores several respiratory examinations that were normal. Doc. 19 at 9; Tr. 345, 350, 361, 373, 381, 397. She also cites notations in the record that she has nail fungus and bilateral eye jaundice and that, on one day, her physician observed she was "chronically ill-appearing." Doc. 19 at 9; Tr. 381, 387, 397. However, Plaintiff has not demonstrated how any of these occurrences support a finding of greater limitations than those found by the ALJ. The court concludes that the ALJ's RFC determination was supported by substantial evidence in the record and that Plaintiff has not established any error by the ALJ.

**B. Whether the ALJ erred by not relying on a medical source opinion when determining Plaintiff's RFC**

Plaintiff next argues that the ALJ erred by not relying on a medical source opinion in determining her RFC. Doc. 19 at 9. In so arguing, Plaintiff faults the ALJ's consideration of consultative examiner Dr. Alan Babb's opinion. *Id.* at 9-10. Plaintiff contends that "the ALJ impermissibly substituted his non-medical administrative opinion for that of [Dr. Babb]." *Id.* at 10.

As an initial matter, Plaintiff is incorrect inasmuch as the ALJ was not required to rely on a medical opinion when determining her RFC. It is not a physician but the ALJ who is charged with assessing a claimant's RFC at the administrative level. *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c); *see also Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) (finding that ALJ "properly carried out his regulatory role as an adjudicator responsible for assessing [the plaintiff's] RFC"). An ALJ's RFC assessment may be supported by substantial evidence, even in the absence of any examining medical source opinion addressing Plaintiff's functional capacity. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (finding an ALJ's RFC assessment supported by substantial evidence where he rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician); *see also Dailey v. Astrue*, No. 11-0347-KD-N, 2012 WL 3206482, at *8 (S.D. Ala. July 18, 2012) ("[A]n ALJ may reach an RFC determination in appropriate circumstances on a record that does not include an RFC opinion from a treating or examining medical source."). Requiring an ALJ's RFC finding to be based on a doctor's opinion "would, in effect, confer upon the [doctor] the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183, at *2.

In this case, when formulating Plaintiff's RFC, the ALJ considered the relevant medical evidence of record, Plaintiff's testimony, and her reported daily activities. Tr. 31-

33. The ALJ also considered the report of Dr. Alan Babb, who performed a consultative physical examination of Plaintiff on July 25, 2014. Tr. 32, 365-368. The ALJ observed that during Dr. Babb's examination Plaintiff demonstrated "some limitation on range of motion of her left wrist, her shoulders, and her right knee, but no problems with gait, grip strength, or dexterity." Tr. 32, 367. Dr. Babb rated Plaintiff's effort and motivation as "poor." *Id.* He diagnosed Plaintiff with degenerative joint disease of the right knee, among other ailments, but he did not provide an RFC assessment. Tr. 33, 367. The ALJ afforded Dr. Babb's findings "substantial, but not full weight," noting that imaging studies performed after his examination "showed no basis for this diagnosis." Tr. 33, 376.

Plaintiff challenges the ALJ's treatment of Dr. Babb's consultative examination, noting that, because Dr. Babb did not provide an RFC assessment, the ALJ "could not have afforded 'substantial' weight to Dr. Babb's RFC assessment." Doc. 19 at 9-10. Plaintiff also argues that "[t]he ALJ must have disagreed with Dr. Babb's clinical Impressions/Diagnoses" and "impermissibly substituted his non-medical administrative opinion for that of the physician's." *Id.* at 10. Plaintiff appears to argue on the one hand that the ALJ should not have afforded any weight to Dr. Babb's opinion because it did not contain an RFC assessment, and, on the other hand, that the ALJ did not give enough weight to certain of Dr. Babb's findings, including that Plaintiff had degenerative joint disease of the right knee.

The court finds these arguments unpersuasive. First, the ALJ was required to consider Dr. Babb's findings. *See* 20 C.F.R. § 416.920(a)(3) ("We will consider all

evidence in your case record when we make a determination or decision whether you are disabled."); *see also* 20 C.F.R. § 416.945(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). To the extent that Plaintiff faults the ALJ for considering or giving weight to Dr. Babb's opinion even though it lacked an RFC assessment, the court finds that argument unavailing. It was well within the ALJ's purview to consider Dr. Babb's examination findings and diagnostic impressions.

Second, to the extent that Plaintiff faults the ALJ for giving too little weight to Dr. Babb's findings, the court notes that the opinion of a one-time consultative examiner, such as Dr. Babb, "is not entitled to great weight and may be discredited by other evidence in the record." *Tapley v. Colvin*, No. CV 113-222, 2015 WL 764022, at *3 (S.D. Ga. Feb. 23, 2015) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004)). The ALJ correctly pointed out that, despite Dr. Babb's diagnosis of degenerative joint disease of the right knee, the results of a later imaging study were "unremarkable" and showed "no fracture, bone destruction, joint effusion, or degenerative change." Tr. 33, 367, 376. In his report, Dr. Babb acknowledged that Plaintiff's knee impairment "[had] not been evaluated to date." Tr. 367. It was entirely appropriate for the ALJ to discount Dr. Babb's report on the basis of later imaging studies, and, in doing this, the ALJ did not "impermissibly substitute" his opinion for Dr. Babb's as Plaintiff suggests. Doc. 19 at 10.

For these reasons, the court concludes that the ALJ did not err in his consideration of the medical opinion evidence and that Plaintiff is not entitled to remand on this issue.

13

**C. Whether the ALJ erred by not addressing the evaluation of a state agency Single Decision Maker**

Finally, Plaintiff argues that the ALJ erred by not discussing the RFC assessment provided by Aaron Jones, a state agency Single Decision Maker ("SDM"). Doc. 19 at 11; Tr. 69-81. On September 9, 2014, Mr. Jones completed an RFC assessment finding that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. Tr. 78. He found that Plaintiff was limited to frequently balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs and that she could never climb ladders, ropes, or scaffolds. *Id.* He also opined that Plaintiff should avoid all exposure to hazardous machinery and unprotected heights. Tr. 79. Plaintiff contends that the ALJ was required to consider and evaluate Mr. Jones' report and erred by not doing so. Doc. 19 at 12.

The court does not agree. "[T]he "SDM" designation connotes no medical credentials." *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (citing 20 C.F.R. § 404.906(a), (b)(2)). The ALJ was not required to consider or give any specific weight to the opinion of the SDM. In fact, had the ALJ relied on the SDM's opinion, such reliance would have been error. *See id.* at 871 ("Indeed, the SSA's Program Operations Manual System ("POMS") explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that 'SDM-completed forms are not opinion evidence at the appeals level.' "); s*ee also Miller v. Astrue*, No. 1:10-cv-1028-WC, 2012 WL 174589, at *3 (M.D. Ala. Jan. 23, 2012) ("The court agrees with the parties

that the ALJ's reliance on the SDM's opinion was indeed error."); *Casey v. Astrue*, No. 07-0878-C, 2008 WL 2509030, at *4 n.3 (S.D. Ala. June 19, 2008) ("[A]n RFC assessment completed by a disability specialist is entitled to no weight."); *Bolton v. Astrue*, No. 3:07-cv-612-J-HTS, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008) ("An SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.") (quotation omitted); *Velasquez v. Astrue*, No. 06-cv-02538-REB, 2008 WL 791950, at *3 (D. Colo. Mar. 20, 2008) (Opinion of SDM is "entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.") (quotation omitted).

The ALJ was not required to evaluate Mr. Jones' RFC assessment and properly excluded it from consideration. Based on its review of the record, the court concludes that substantial evidence supports the assigned RFC and that Plaintiff has not established any error by the ALJ.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 16th day of October, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE